UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MARGUIS CARTER,

                           Plaintiff,

v.

DO & CO NEW YORK CATERING, INC.,
ARTHUR SAKS, and WERNER GRATZL,

                           Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Marguis Carter, by and through his attorneys, Valli Kane & Vagnini LLP, hereby alleges as follows:

## INTRODUCTION

1.     This is an action for an award of damages, attorney's fees and other relief on behalf of Plaintiff, Marguis Carter, a former employee of Defendant, DO & CO New York Catering, Inc., who has been harmed by Defendants' discriminatory employment practices.

2.     This action is brought under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, as amended by the Civil Rights Act of 1991, and the New York State Human Rights Law ("NYSHRL"), N.Y. Executive Law § 290 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), Admin. Code § 8-101 *et seq.*, for unlawful discriminatory practices relating to employment on account of plaintiff's race, color and/or national origin, hostile work environment, and termination in retaliation for his complaints of discrimination.

## JURISDICTION AND VENUE

3.     Jurisdiction of this Court is founded pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, pursuant to 42 U.S.C. § 2000 *et seq.* under Title VII, and pursuant to 28 U.S.C. §§ 1343(3) and

1

1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights.

4. The Court's supplemental jurisdiction is invoked pursuant to 28 U.S.C. § 1367(a), which confers supplemental jurisdiction over all non-federal claims arising from a common nucleus of operative facts such that they form part of the same case or controversy under Article III of the United States Constitution.

5. Venue is proper in this Court under 28 U.S.C. § 1391(b) since the unlawful employment giving rise to Mr. Carter's claims occurred in the Eastern District of New York.

## PARTIES

6. Plaintiff Marguis Carter ("Plaintiff" or "Mr. Carter") is an African American male and former employee of Defendant, who resides in Amityville, New York.

7. Defendant DO & CO New York Catering, Inc. ("Defendant," "DOCONYC" or the "Company") is, upon information and belief, a corporation duly organized and existing under the laws of the State of Delaware. DOCONYC also conducts business in the state of New York and maintains offices at 149-32 132nd Street, Jamaica, New York 11430.

8. Defendant Arthur Saks ("Defendant Saks") was Mr. Carter's supervisor during Plaintiffs' employment at DOCONYC.

9. Defendant Werner Gratzl ("Defendant Gratzl"), was the Executive Chef during Plaintiffs' employment at DOCONYC.

10. At all times relevant hereto, Defendant DOCONYC was acting through its agents, servants and employees, who were acting within the scope of their authority, course of employment, and under the direct control of Defendant DOCONYC.

At all times relevant hereto, DOCONYC has been an "employer" as defined under Title

2

VII and the NYSHRL, and has been, and is, subject to the provisions of those statutes.

## ADMINISTRATIVE EXHAUSTION

11. On or about April 6, 2015 Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No.: 520-2015-02061.

12. Plaintiff received a "Right to Sue" notice from the EEOC on or about October 31, 2016 and this action has been filed within ninety (90) days of receipt of said notice.

13. Plaintiff will serve this Complaint within ten (10) days of filing upon the New York City Division of Human Rights and Corporation Counsel as required by the New York City Human Rights Law.

## STATEMENT OF FACTS

14. Plaintiff was employed by Defendant DOCONYC from on or about October 13, 2014 until on or about December 19, 2014, the date of his unlawful termination.

15. Defendant DOCONYC is a business that provides airline catering to numerous international air carriers and various private business jets emanating from JFK International Airport.

16. During the course of his employment with DOCONYC, Mr. Carter held the position of Production Supervisor in the Food Assembly Department. As Plaintiff had over fifteen (15) years of extensive experience in the culinary industry at the time he was hired, he was substantially and uniquely qualified to hold this supervisory position.

17. Upon information and belief, throughout Mr. Carter's employ, there were approximately only ten (10) African American employees in his department. Upon further information and belief, African Americans are underrepresented in managerial and higher paying

positions at DOCONYC. Instead, most African American are employed as truck drivers or maintenance workers.

18.   Soon after his hire, on or around late October 2014, Mr. Carter was subjected to clear instances of racially charged remarks and epithets. For instance, Mr. Carter was approached by Defendant Gratzl, the White Executive Chef, who proceeded to explain to Mr. Carter that a well-known White chef from Mr. Carter's previous employer, did not like "his kind," heavily demonstrating Defendant Gratzl's own disgust towards African Americans. During the relevant time period, Defendant Gratzl supervised in excess of one hundred (100) employees.

19.   Mr. Carter was additionally subjected to numerous racially charged remarks and epithets from co-workers and supervisors, including, but not limited to, "nigger," "black motherfucker," "black ass," "ghetto," and "blackie."

20.   Thereafter, Mr. Carter complained to Defendant Saks, Mr. Carter's White immediate supervisor, that he was uncomfortable having to endure a racially tense work environment. In response, Defendant Saks laughed and dismissed Mr. Carter's complaint saying it wasn't "really a big deal."

21.   As a result of his complaint, Mr. Carter began being racially ridiculed by supervisors from Defendant Gratzl's department. Frequently, these supervisors approached Mr. Carter saying, "what's up my nigger?" knowing of Mr. Carter's complaints.

22.   Mr. Carter repeatedly and continuously expressed his disapproval to Defendant Saks, insisting that Saks correct the offensive, racially harassing environment to which Mr. Carter was subjected. In response, Defendant Saks advised Mr. Carter to "stop being so uptight and sensitive."

4

23. After these internal complaints were dismissed by Defendant Saks, Mr. Carter then sought help by filing a formal complaint. However, Defendant Saks unrelentingly maintained that Mr. Carter just needed to "suck it up."

24. Furthermore, Saks cautioned Mr. Carter that if he continued to take offense to these racially motivated remarks and comments, Mr. Carter's job would be jeopardized as such sensitivity would indicate his ill-fit at DOCONYC.

25. Despite Mr. Carter's repeated complaints, no actions were taken to correct or address his complaints. Additionally, Defendant Saks refused to hear any further complaints of racial animus made by Mr. Carter.

26. In around early November 2014, Mr. Carter complained about the hostile work environment to Nicole Kokaram ("Kokaram"), the Company's Human Resources Manager, through written correspondence and e-mails.

27. In response and in retaliation to his complaints, supervisors sought to isolate Mr. Carter. He was excluded from certain meetings where his presence, as a supervisor, was required. Additionally, Mr. Carter began suffering a barrage of racially motivated and discriminatory comments by his superiors and co-workers at a much more frequent rate.

28. On or about November 27, 2014, Chris, a White supervisor, called Mr. Carter a "nigger" in front of other employees and proceeded to ask Mr. Carter if he liked rap music since he was "raised in the ghetto part of Georgia."

29. Kokaram assured Mr. Carter something would be done and to "be patient." Unfortunately, *nothing* was ever done to remedy the hostile work environment at the Company and Mr. Carter continued to be subjected to offensive conduct and language. For instance, on or

5

about December 13, 2014, Mr. Carter reported being called a "blackie" by Defendant Gratzl to Kokaram.

30. At all times relevant hereto, Plaintiff maintained a satisfactory job performance in his capacity of Production Supervisor. Mr. Carter was never made aware of any issues in his performance or his punctuality.

31. Prior to accepting his position, Mr. Carter told Saks there were certain days he would need off from work, as he was moving from Georgia to New York for this position. Defendant Saks clearly indicated to Mr. Carter he could have these days off. Later, Mr. Carter later reminded Defendant Saks through text message and phone calls, which went unanswered.

32. Despite his request and subsequent reminders, Mr. Carter was cited as having missed one (1) day of work, December 10, 2014, and being late on three (3) other days of work, December 11, 18 and 19, 2014.

33. Remarkably, Defendant Saks demanded Mr. Carter's presence at work despite knowing Mr. Carter was not in the State. Mr. Carter believes this was a deliberate attempt to interfere with his employment in retaliation for his complaints about racial harassment and the hostile work environment at the Company.

34. Nevertheless, on or about December 19, 2014, less than a week after Mr. Carter last voiced his concerns to Kokaram, Defendant DOCONYC abruptly terminated Plaintiff's employment. At the time, Defendant did not provide Mr. Carter with any explanation as to why he was being terminated.

35. Subsequently, after his termination, Mr. Carter was told that he had been terminated due to his poor performance, for his absence, and for the three (3) times he arrived late to work.

6

This supposed "poor performance" was purportedly based upon an overall assessment of his performance by Defendant Saks, including his ability to successfully communicate with co-workers and attitude.

36. DOCONYC's refusal to remediate the hostile work environment at the Company, and subsequent termination of plaintiff, created a chilling effect on employees with respect to complaints concerning Title VII, civil rights, or other legitimate complaints concerning employment practices within the Company's workplace.

37. Defendants did not make a good faith effort to comply with Title VII as it engaged in the intentional discriminatory practices set forth herein.

38. Plaintiff believes and avers that no legitimate business reason existed for the termination of his employment, and that the decision was pretextual and was actually based on his race and/or color, and in retaliation for engaging in protected activity.

### AND AS FOR A FIRST CAUSE OF ACTION

#### Violation of Title VII – Race and/or Color Discrimination
#### (Against All Defendants)

39. Plaintiff repeats and realleges the allegations contained in the paragraphs above, as if fully set forth herein.

40. The actions of Defendants, including subjecting Plaintiff to discrimination on the basis of his race and/or color, constituted a violation of Title VII.

41. Defendants discriminated against Plaintiff by treating him differently from and less favorably than similarly situated non-African American employees, by fostering a hostile work environment, and thereafter terminating his employment.

42. At all relevant times, Defendants were aware of and/or condoned and/or participated in the harassment and abuse towards Plaintiff.

43. As a result, Plaintiff has suffered and continues to suffer damages and harm, including but not limited to lost wages and emotional distress.

## AND AS FOR A SECOND CAUSE OF ACTION

### Violation of Title VII – Retaliation
### (Against Defendant DOCONYC)

44. Plaintiff repeats and realleges the allegations contained in paragraphs above, as if fully set forth herein.

45. Plaintiff complained to Defendant DOCONYC about being constantly subjected to racially charged remarks and epithets. Plaintiff additionally complained about retaliation he was being subjected to for complaining about the disparate treatment he received as a Black, African American employee of Defendant.

46. In response, Defendant DOCONYC further retaliated against Plaintiff by subjecting him to termination.

47. As a result, Plaintiff has suffered and continues to suffer damages and harm, including but not limited to lost wages and emotional distress.

## AND AS FOR A THIRD CAUSE OF ACTION

### Violation of Title VII – Wrongful Termination
### (Against Defendant DOCONYC)

48. Plaintiff repeats and realleges the allegations contained in the paragraphs above, as if fully set forth herein.

49. Defendant, through its agents or supervisors, unlawfully discriminated against Mr. Carter in his employment when it terminated his employment without cause or justification.

50. As a result, Plaintiff has suffered and continues to suffer damages and harm, including but not limited to, lost wages and emotional distress.

### AND AS FOR A FOURTH CAUSE OF ACTION

**Violation of New York State Human Rights Law**
**(Against All Defendants)**

51. Plaintiff repeats and realleges the allegations contained in the paragraphs above, as if fully set forth herein.

52. The above-described illegal conduct created an intimidating, oppressive, hostile and offensive work environment.

53. Defendants at all times relevant hereto had actual or constructive knowledge of the conduct described above.

54. As a result of the hostile and offensive work environment perpetrated and maintained by Defendants and Defendants' failure to correct such environment, Mr. Carter has suffered and continues to suffer damages and harm, including but not limited to lost wages and emotional distress.

55. Defendants acted with a conscious disregard for Plaintiff's rights and with the intent and purpose of injuring him. Defendants authorized, condoned and/or ratified the unlawful conduct.

## AND AS FOR A FIFTH CAUSE OF ACTION

### Violation of New York State Human Rights Law
### (Against All Defendants)

56.     Plaintiff repeats and realleges the allegations contained in the paragraphs above, as if fully set forth herein.

57.     Defendants subjected Plaintiff to race and/or color discrimination in the workplace, a hostile work environment and retaliatory termination.

58.     These actions are in direct violation of the New York State Human Rights Law.

59.     As a direct result of the aforesaid discriminatory employment practices engaged in by Defendants in violation of the NYSHRL, Plaintiff has suffered and continues to suffer damages and harm, including but not limited to lost wages and emotional distress.

## AND AS FOR A SIXTH CAUSE OF ACTION

### Violation of New York City Human Rights Law
### (Against All Defendants)

60.     Plaintiff repeats and realleges the allegations contained in the paragraphs above, as if fully set forth herein.

61.     The actions of Defendants, in subjecting Plaintiff to discrimination on the basis of his race and/or color, constituted a violation of the NYCHRL.

62.     As a direct result of aforementioned discriminatory employment practices engaged in by Defendants in violation of the NYCHRL, Plaintiff has suffered and continues to suffer damages and harm, including but not limited to, lost wages and emotional distress.

## AND AS FOR A SEVENTH CAUSE OF ACTION

### Violation of New York City Human Rights Law
### (Against All Defendants)

63. Plaintiff repeats and realleges the allegations contained in the paragraphs above, as if fully set forth herein.

64. Defendants actions subjected Plaintiff to race and/or color discrimination in the workplace, a hostile work environment and retaliatory termination.

65. These actions are in direct violation of the New York City Human Rights Law.

66. As a direct result of the aforesaid aiding and abetting discriminatory employment practices engaged in by Defendants in violation of the NYCHRL, Plaintiff has suffered and continues to suffer damages and harm, including but not limited to lost wages and emotional distress.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests judgment against Defendants and the following relief, as follows:

53. A jury trial on all issues so triable to determine liability and damages;

54. Preliminary and permanent injunctions against Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

55. A judgment declaring that the practices complained of herein are unlawful and in violation of Title VII, 42 U.S.C. § 2000e *et seq.*, as amended by the Civil Rights Act of 1991, and NYSHRL, N.Y. Executive Law § 290 *et seq.*;

56. An award to the Plaintiff for the amount of lost wages, including interest thereon, and penalties subject to proof;

57. All damages which Plaintiff sustained as a result of Defendant's conduct, including back pay, front pay, general and special damages for lost compensation and job benefits they would have received but for Defendant's improper practices;

58. An award to Plaintiff of compensatory damages, including but not limited to damages for emotional pain and suffering;

59. An award to Plaintiff of pre-judgment interest at the highest level applicable, from and after the date of service of the initial complaint in this action, on all lost wages from the date such wages would have been earned and due, but for Defendant's unlawful actions;

60. Awarding Plaintiff his costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees, and other costs;

61. Post-judgment interest, as provided by law; and

62. Any other relief this Court deems necessary and proper.

Dated:   January 30, 2017
         Garden City, New York

                              Respectfully Submitted,

                              VALLI KANE & VAGNINI LLP

                              _____
                              MATTHEW L. BERMAN
                              ROBERT J. VALLI, JR.
                              SARA WYN KANE
                              JAMES A. VAGNINI
                              *Attorneys for Plaintiff*
                              600 Old Country Road, Suite 519
                              Garden City, New York 11530
                              Tel.: (516) 203-7180
                              Fax.: (516) 706-0248